## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**NICOLE WISE, HOLLY ALCAZ,**
**and HAROLD VELEZ, on behalf of**
**themselves and others similarly situated,**

      **Plaintiffs,**                            **Case No:**

**v.**                                    **CLASS REPRESENTATION**

**CAPITAL ONE FINANCIAL**              **JURY TRIAL DEMANDED**
**CORPORATION, a Delaware corporation,**
**CAPITAL ONE, N.A., a foreign corporation,**    **INJUNCTIVE RELIEF SOUGHT**
**and CAPITAL ONE BANK (USA), N.A.,**
**a Virginia corporation,**

      **Defendants.**

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, NICOLE WISE (hereinafter, "Plaintiff Wise"), HOLLY ALCAZ (hereinafter, "Plaintiff Alcaz"), and HAROLD VELEZ (hereinafter, "Plaintiff Velez") (hereinafter, collectively "Plaintiffs"), on behalf of themselves and on behalf of all others similarly situated, by and through the undersigned counsel hereby bring this Class Action Complaint against Defendants CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE, N.A., and CAPITAL ONE BANK (USA), N.A. (hereinafter, collectively "Capital One" or "Defendants"), and based upon personal knowledge, information, belief, and investigation of counsel, specifically allege as follows:

## INTRODUCTION

1. Plaintiffs bring this action against Capital One for their failure to implement ordinary and prudent practices that a reasonable entity under similar circumstances would have implemented to protect the confidential personal information of millions of consumers, including

the consumers' credit scores, credit limits, account balances, bank account numbers, segments of transaction history , and the consumers' names, addresses, phone numbers, dates of birth, e-mail addresses, and social security numbers (all collectively "Personal Information"). Defendants' wrongful disclosure of the Personal Information has harmed Plaintiffs and the Class, which Class is anticipated to include over one hundred million credit card customers and those that submitted credit card applications to Capital One between the fourteen years spanning from 2005 through early 2019.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (a.) Plaintiffs are citizens of Florida (and the proposed class members are from several different states across the country) and Defendants are citizens of Virginia; (b.) the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs; and (c.) there are 500 or more members of the Class according to Capital One's public admission that approximately 100,000,000 consumers' Personal Information was affected.

3.     This Court has personal jurisdiction over Capital One because Capital One conducts business in and throughout the State of Florida, and the wrongful acts alleged in this Class Action Complaint were committed in the State of Florida, as well as other venues across the country.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this District.

## PARTIES

5.      Plaintiff, NICOLE WISE, is an individual residing in Lutz, Florida, who has been a credit card customer of Capital One and whose Personal information, under information and belief, was compromised in the Data Breach described herein.

6.      Plaintiff, HOLLY ALCAZ, is an individual residing in Lutz, Florida, who has been a credit card customer of Capital One and whose Personal Information, under information and belief, was compromised in the Data Breach described herein.

7.      Plaintiff, HAROLD VELEZ, is an individual residing in Orlando, Florida, who has been a credit card customer of Capital One and whose Personal Information, under information and belief, was compromised in the Data Breach described herein.

8.      Defendant, CAPITAL ONE FINANCIAL CORPORATION, is a Delaware corporation with its principal place of business located at 1680 Capital One Drive, McLean, Virginia.

9.      Defendant, CAPITAL ONE, N.A., is a national bank with its principal place of business in McLean, Virginia. Defendant, CAPITAL ONE, N.A., is one of two wholly-owned subsidiaries of Defendant, CAPITAL ONE FINANCIAL CORPORATION.

10.     Defendant, CAPITAL ONE BANK (USA), N.A., is a national bank with its principal place of business in McLean, Virginia. Defendant, CAPITAL ONE BANK (USA), N.A., is one of two wholly-owned subsidiaries of Defendant, CAPITAL ONE FINANCIAL CORPORATION.

## GENERAL FACTUAL ALLEGATIONS

11.     Defendant, CAPITAL ONE FINANCIAL CORPORATION, by and through its subsidiaries including Defendants, CAPITAL ONE, N.A. and CAPITAL ONE BANK (USA),

N.A., is self-proclaimed as one of the nation's top 10 largest banks based on deposits that serves approximately 45 million consumer accounts.

## A.  Capital One's Data Breach

12.     On July 29, 2019, Capital One announced that ten days prior, on "July 19, 2019, it determined there was unauthorized access by an outside individual who obtained certain types of personal information relating to people who had applied for its credit card products and to Capital One credit card customers" (generally referred to hereinafter as "Data Breach").[1]

13.     Specifically, as of July 29, 2019, Capital One admitted in its Breach Notice that fourteen years of personal information submitted in credit card applications from 2005 through 2019, including the names, addresses, zip codes/postal codes, phone numbers, email addresses, dates of birth, and self-reported income, were breached. Capital One also admitted in its Breach Notice that consumer status data, including credit scores, credit limits, balances, payment history, contact information, and fragments of transaction data were breached. Further, Capital One admitted that "[a]bout 140,000 Social Security numbers of our credit card customers" and "[a]bout 80,000 linked bank account numbers of our secured credit customers were breached."

14.     The Department of Justice issued a news release stating that an individual named Paige A. Thompson (hereinafter "Thompson"), also known as "erratic," was able to simply gain access to the Personal Information through Capital One's "misconfigured web application firewall."[2]

---

[1]   *Overview—Frequently Asked Questions*, Capital One (last accessed July 31, 2019) found at: https://www.capitalone.com/facts2019/ (hereinafter, the "Breach Notice").

[2]   *Seattle Tech Worker Arrested for Data Theft Involving Large Financial Services Company*, United States Department of Justice (last accessed July 31, 2019) found at: https://www.justice.gov/usao-wdwa/pr/seattle-tech-worker-arrested-data-theft-involving-large-financial-services-company.

15.    Indeed, the U.S. Attorney Criminal Complaint against Thompson states that Thompson entered Capital One's confidential consumer server containing the Personal Information through Capital One's misconfigured web application firewall and posted the Personal Information on her publicly available GitHub file on April 21, 2019.[3]

16.    Over three months after the millions of consumer and small businesses' Personal Information was made publicly available, Capital One first discovered the Data Breach when a "previously unknown individual" sent an email to Capital One that read as follows:

> "Hello there,
>
> There appears to be some leaked s3 data of yours in someone's github/gist:
>
> https://gist.github.com[Redacted)]
>
> Let me know if you want any help tracking them down.
>
> Thanks,
>
> [Redacted]"[4]

17.    Capital One did not discover the Data Breach for over three months because Capital One has inadequate data security to protect Personal Information during the course of its business. Under information and belief, Capital One's only procedure in place to test the sufficiency of its mechanisms intended to protect the Personal Information of over one hundred million consumers and small businesses that actually detected the Data Breach was its policy to "maintain an e-mail address through which it solicits disclosures of actual or potential

---

[3] Complaint for Violation of 18 U.S.C. § 1030(a)(2), United States Attorney (last accessed July 31, 2019) found at: https://www.justice.gov/usao-wdwa/press-release/file/1188626/download.

[4] *Id.*

vulnerabilities in its computer systems, so that Capital One can learn of, and attempt to avert, breaches of its systems."[5]

18.     While immediate, or even reasonably timely, action by Capital One in identifying the Data Breach would likely have greatly reduced the harmful consequences to Plaintiffs and the Class members, instead, its inaction and negligence directly and proximately caused the scale of the Data Breach and the resulting damages to Plaintiffs and Class members.

19.     The inadequacies in Capital One's data security and personal information maintenance procedures were so significant that its misconfigured firewall permitted an individual to gain access to the Personal Information of any consumer or small business that applied for one of Capital One's credit card offerings during the fourteen year span from 2005 through early 2019.

**B.  Capital One's Privacy Policies and Promise to Keep Personal Information Confidential**

20.     Capital One requires that consumers and small business provide certain personal information as a condition of credit. In Capital One's ordinary course of business, Capital One maintained that personal information, including, but not limited to, names, dates of birth, addresses, and Social Security numbers, for an unreasonably excessive period of time.

21.     Capital One thereby assumed legal and equitable duties to the Plaintiffs and Class members upon obtaining, collecting, using, and deriving a benefit from their Personal Information. Capital One knew or should have known that it was responsible for protecting the Plaintiffs and Class Members' Personal Information from unauthorized disclosure, including disclosure through theft.

_____
[5] *Id.*

22.     At all times relevant hereto, Plaintiffs and the Class members have taken reasonable steps to maintain the confidentiality and protection of their own Personal Information.

23.     Plaintiffs and the Class members reasonably relied on Capital One to keep their Personal Information used for credit application purposes confidential and securely maintained. Further, Plaintiffs and the Class members reasonably relied on Capital One to use their Personal Information for business purposes only, and to only make authorized disclosures of their Personal Information.

24.     Defendants had obligations arising from promises made to its credit card product applicants and customers like Plaintiffs and the Class members, and arising from industry standards, to keep the Personal Information confidential and protect it from unauthorized disclosure.

25.     Capital One promises customers that it will keep their Personal Information confidential, including, but not limited to, the following promises made on its website:

> "Our Communication Practices
>
> Encrypted Sessions
>
> We use some of the strongest forms of encryption commercially available for use on the Web today.
>
> Online communication between you, your account, and Capital One are protected. Your data is encrypted with 128-bit Secure Socket Layer (SSL), which helps ensure that sensitive information can only be viewed by you and our secure systems."[6]

> "We're committed to maintaining the privacy and security of your information so you can feel safe banking no matter where you are.
>
> • We build security into all of our systems and networks.

---

[6] https://www.capitalone.com/applications/identity-protection/commitment/ (last accessed July 31, 2019).

- Our experts perform internal and external tests on all our applications and systems to safeguard your information.

- We leverage multiple preventative and detective methods to mitigate risks and protect access to your information through a layered security program."[7]

"SAFEGUARDING YOUR PRIVACY

CAPITAL ONE TAKES OUR COMMITMENT TO PROTECTING YOUR PRIVACY SERIOUSLY"[8]

"To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."[9]

26.     Defendants' data security failures related to the Data Breach show that they failed to honor their duties and promises to the Plaintiffs and the Class members, including those identified above, by not:

a.   Maintaining an appropriate security system to protect the Personal Information of the Plaintiffs and the Class members;

b.   Appropriately monitoring their security system to identify any data breaches or cyber-attacks within a reasonable time period under industry standards and applicable law; and

c.   Maintaining policies and procedures to reduce the risk of data breaches and cyber-attacks to a reasonable level under industry standards and applicable law.

---

[7] *Frequently Asked Questions—General Questions: How does Capital One protect my personal and business information?* (last accessed July 31, 2019) found at: https://www.capitalone.com/applications/identity-protection/commitment/.

[8] https://www.capitalone.com/identity-protection/privacy (last accessed July 31, 2019).

[9] https://www.capitalone.com/privacy/notice/en-us/ (last accessed July 31, 2019).

27.     At all times relevant hereto, Defendants were aware of their responsibility to maintain their data security promises and obligations to their millions of customers whom entrusted Defendants with their Personal Information, which promises and obligations were especially important given the recent substantial increase in data breaches.

28.     At all times relevant hereto, Defendants were aware that their security systems were insufficient to protect their customers' Personal Information because Defendants have had several security breaches occur prior to the Data Breach at issue herein. For example, in or around January of 2018, a data breach of Defendants' systems compromised 50GB of sensitive data that put Defendants' network at a high risk of vulnerability. Additionally, Defendants have previously issued formal letters in or around November of 2014, July of 2017, and September of 2017 to an unknown number of their customers that informed their customers their personal information may have been breached.

## C.  Federal Trade Commission Requirements

29.     The Federal Trade Commission ("FTC") has settled more than fifty data security law enforcement actions and has issued several guides for business to follow that stress the significance of businesses maintaining reasonable data security practices. To that effect, the FTC recommends the following:

> Collecting and maintaining information "just because" is no longer a sound business strategy. Savvy companies think through the implication of their data decisions. By making conscious choices about the kind of information you collect, how long you keep it, and who can access it, you can reduce the risk of a data compromise down the road.
> . . .
> **Hold on to information only as long as you have a legitimate business need.**

> Sometimes it's necessary to collect personal data as part of a transaction. But once the deal is done, it may be unwise to keep it. In the FTC's *BJ's Wholesale Club* case, the company collected customers' credit and debit card information to process transactions in its retail stores. But according to the complaint, it continued to store that data for up to 30 days – long after the sale was complete. Not only did that violate bank rules, but by holding on to the information without a legitimate business need, the FTC said BJ's Wholesale club created an unreasonable risk. By exploiting other weaknesses in the company's security practices, hackers stole the account data and used it to make counterfeit credit and debit cards. The businesses could have limited its risk by *securely disposing of the financial information when it no longer had a legitimate need for it.*[10]

30.    The FTC's *BJ's Wholesale Club* case is one example of many enforcement actions filed by the FTC against businesses for failing to reasonably and sufficiently protect consumer data, where such failure constituted an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45.[11]

31.    Capital One's failure to employ reasonable and adequate measures to protect against unauthorized access to confidential consumer data, including the Personal Information at issue here, constitutes an unfair act or practice in violation of the FTC Act, 15 U.S.C. § 45.

**D.  Plaintiffs and Class Members Suffered Damages**

32.    Capital One did not maintain an appropriate security system to protect the Personal Information of the Plaintiffs' and the Class members, did not monitor their security system to identify any data breaches within a reasonable time period, and did not maintain procedures to reduce the risk of data breaches.  Further, Capital One did not obtain the Plaintiffs'

---

[10] *Start with Security: A Guide for Business*, Federal Trade Commission (last accessed August 1, 2019) found at: https://www.ftc.gov/tips-advice/business-center/guidance/start-security-guide-business.

[11] *See e.g.*, FTC Complaint from: *In the Matter of BJ's Wholesale Club, Inc.*, Docket No. C-4148, (last accessed August 1, 2019) found at https://www.ftc.gov/sites/default/files/documents/cases/2005/09/092305comp0423160.pdf.

or Class members' consent to disclose their Personal Information to any third party as required by applicable law and industry standards.

33.     As a direct and proximate consequence of Capital One's failure to protect the Plaintiffs' and Class members' Personal Information, the Data Breach occurred. Capital One had the opportunity and resources to prevent the Data Breach, but instead chose to maintain insufficient data security procedures that ignored the substantial risk of unauthorized access to the Personal Information in its customer systems.

34.     As a direct and proximate result of the Data Breach, Plaintiffs and the Class members have been placed at an immediate and ongoing risk of harm from identity theft, identity fraud, and other consequences that directly flow from an individual's Personal Information being obtained by a hacker. The risk of harm from identity theft, identity fraud, and other related consequences will require the Plaintiffs and Class members to spend hours of their valuable time to implement credit freezes, credit monitoring, credit alerts, and to constantly monitor their financial accounts, credit reports, and personal identity as a whole.

35.     Capital One's unlawful actions and inactions directly and proximately caused the Data Breach of Plaintiffs' and the Class members' Personal Information, causing Plaintiffs' and the Class members to currently suffer, and continue to suffer, economic damages and actual harm for which they are entitled to compensation.

**E.  Capital One's Data Breach Will Cause Future Harm**

36.     Capital One's Data Breach has not only caused damage to the Plaintiffs and Class members already, but will also have long lasting and severe consequences as the Personal Information is at risk for misuse by identity thieves for years to come.

37.     In a June 2007 report on data breaches, the United States Government Accountability Office noted that identity thieves, such as those that had access to the Plaintiffs' and Class members' Personal Information during the three-month period from April 2019 through July 2019, use personally identifying data such as Social Security numbers to open financial accounts, incur charges in the person's name, and receive government benefits.[12]

38.     The FTC has also recognized that once identity thieves have Personal Information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[13]

39.     Identity theft victims are frequently required to spend long hours and significant expense repairing the impact to their credit. Indeed, the Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of 7 hours clearing up the issues" and resolving the consequences of fraud.[14]

## CLASS REPRESENTATIVES' ALLEGATIONS

40.     In or around 2005, Plaintiff Wise applied for two credit card accounts with Capital One.

41.     Additionally, in or around 2008, Plaintiff Wise applied for a third credit card account with Capital One.

42.     In or around 2011, Plaintiff Alcaz applied for two credit card accounts with Capital One.

---

[12] *See* U.S. Gov't Accountability Off., GAO-07-737, *Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* (2007).

[13] *Warning Signs of Identity Theft*, Federal Trade Commission (last accessed August 1, 2019) found at: https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft.

[14] Victims of Identity Theft, 2014 (Sept. 2015) available at: http://www.bjs.gov/content/pub/pdf/vit14.pdf.

43.     In or around 2014, Plaintiff Velez applied for a credit card account with Capital One.

44.     The Data Breach has caused Plaintiffs to spend time reviewing their credit reports and financial accounts for fear that they will find an indication that their Personal Information disclosed in the Data Breach has been misused.

45.     Plaintiffs will have to continue spending their valuable time reviewing their credit reports and financial accounts to ensure that any misuse of the Personal Information will be detected since it was improperly disclosed by Capital One.

46.     Plaintiffs suffered actual injury from their Personal Information being stolen and displayed on a public forum for over three months as a result of the Data Breach.

47.     Further, Plaintiffs would not have provided their Personal Information to apply for credit cards with Capital One if Capital One had revealed that it lacked reasonable data security procedures to protect its applicant and customers' information from theft.

48.     Plaintiffs suffered actual injury and damages from purchasing products and paying money to Capital One during the Data Breach, which expense would not have been remitted if Capital One had revealed that it lacked reasonable data security procedures to protect its customers' information from theft.

49.     Plaintiffs suffered actual injury and damages from purchasing products and paying money to Capital One during the Data Breach, which expense would not have been remitted if Capital One had revealed that the Data Breach occurred within a reasonable time after the Data Breach occurred.

50.     Plaintiffs suffered actual injury in the form of annoyance, aggravation, and inconvenience as a direct and proximate result of the Data Breach.

51.     Plaintiffs suffered invasion of privacy as a direct and proximate result of the Data Breach.

52.     Plaintiffs have suffered, and will continue to suffer, actual injury in the form of the value of their lost time spent reviewing their credit reports and financial accounts to ensure that any misuse of the Personal Information will be detected since it was improperly disclosed by Capital One.

53.     Plaintiffs have suffered, and will continue to suffer, injury arising from the significantly increased risk of identity theft, identity fraud, and other risks associated with the misuse of their Personal Information.

54.     Plaintiffs have a continuing interest in ensuring that their Personal Information, which still remains in possession of Capital One, is protected and safeguarded from future data breaches.

## CLASS ACTION ALLEGATIONS

55.     Plaintiffs bring this action on behalf of themselves and as a class action under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), seeking damages and equitable relief on behalf of the following nationwide Class:

> All persons residing in the United States who applied for Capital One credit card products from 2005 through 2019 and whose Personal Information was disclosed to unauthorized third parties (the "Nationwide Class").

56.     Additionally, Plaintiffs bring this action on behalf of a sub-class seeking equitable relief on behalf of the following:

> All persons residing in the State of Florida who applied for Capital One credit card products from 2005 through 2019 and whose Personal Information was disclosed to unauthorized third parties (the "Florida Sub Class").

57.     Excluded from the Classes are Capital One, any parent, affiliate, or subsidiary of Capital One, any entities in which Capital One has a controlling interest, as well as Capital One's officers or directors and any successors or assigns of Capital One.  Also excluded are any Judge or court personnel assigned to this case and members of their immediate families.

58.     Plaintiffs hereby reserve the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

59.     **Numerosity. Fed. R. Civ. P. 23(a)(l).** Consistent with Rule 23(a)(l), the Classes are so numerous that joinder of all members is impracticable. While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe the Nationwide Class contains approximately 100 million people. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media, and/or published notice.

60.     **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirements, this action involves common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting individual members of the Classes. Such questions of law and fact common to the Classes include, but are not limited to:

a.   Whether Capital One had a legal duty to implement and maintain reasonable and adequate security procedures and practices for the protection of information it collected and stored from consumers who applied for Capital One credit card products;

b.   Whether Capital One had a duty to adequately protect Personal Information;

c. Whether and when Capital One knew or should have known of the susceptibility of its computer systems to a data breach;

d. Whether Capital One's security measures to protect its computer systems were reasonable in light of the FTC data security recommendations and best practices recommended by data security experts;

e. Whether Capital One engaged in the wrongful conduct alleged herein;

f. Whether Capital One was negligent in failing to implement reasonable and adequate security procedures and practices to protect the information it collected and stored from consumers who applied for Capital One credit card products;

g. Whether Capital One's failure to implement adequate data security measures resulted in or was the proximate cause of the Data Breach;

h. Whether Capital One's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its computer systems, resulting in the loss of the Personal Information belonging to Plaintiffs and Class members;

i. Whether Plaintiffs and Class members were injured and suffered damages or other losses because of Capital One's failure to reasonably protect its computer systems and data network; and

j. Whether Plaintiffs and Class members are entitled to relief, including equitable relief

61. **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with rule 23(a)(3), Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs are consumers who provided Personal Information to in order to apply for Capital One credit card products and who had their Personal Information compromised as a result of the Data Breach. Plaintiffs' damages

and injuries are akin to other Class members, and Plaintiffs seek relief consistent with the relief of the Class members.

62.     **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiffs are adequate representatives of the Classes because Plaintiffs are members of the respective Classes and are committed to pursuing this matter against Capital One to obtain relief for the Classes. Plaintiffs have no conflicts of interest with either Class members. Plaintiffs' Counsel are competent and experienced in litigating consumer class actions. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Classes' interests. Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes.

63.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the Classes are relatively small compared to the burden and expense required to individually litigate their claims against Capital One, and thus, individual litigation to redress Capital One's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single

adjudication, economies of scale, and comprehensive supervision by a single court.

64.    **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Capital One, through its uniform conduct, acted or refused to act on grounds generally applicable to the Classes as a whole, making injunctive and declaratory relief appropriate to the Classes as a whole.

65.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues are set forth herein in Paragraph 60.

66.    Finally, all members of the proposed Classes are readily ascertainable. Capital One has access to information regarding the applications from consumers for the span of time from 2005 through 2019 and the consumers affected by the Data Breach. Using this information, Class members can be identified and their contact information ascertained for the purpose of providing notice to the Classes

### FIRST CLAIM FOR RELIEF
### Breach of Implied Contract
### (On behalf of all Classes)

67.    Plaintiffs restate and realleges paragraphs 1 through 66 as if fully set forth herein.

68.    Capital One solicited and invited Plaintiffs and Class members to apply for credit card products by providing their Personal Information. Plaintiffs and Class members accepted Capital One's offers and provided their Personal Information to Capital One to apply for Capital One credit card products.

69.    When Plaintiffs and Class members applied Capital One credit card products, they provided their Personal Information to Capital One. In so doing, Plaintiffs and Class members on

the one hand, and Capital One on the other, entered into mutually agreed-upon implied contracts pursuant to which Plaintiffs and Class members agreed that their Personal Information was valid, while Capital One agreed that it would use Plaintiffs and Class members' Personal Information in its possession for only the agreed-upon purpose of processing the credit card product application, and no other purpose.

70.     Implicit in the agreement to use the Personal Information in its possession for only the agreed-upon application and no other purpose was the obligation that Capital One would use reasonable measures to safeguard and protect the Personal Information of Plaintiffs and Class members in its possession.

71.     By accepting Personal Information for credit card product applications, Capital One assented to and confirmed its agreement to reasonably safeguard and protect Plaintiffs' and Class members' Personal Information from unauthorized disclosure or uses and to timely and accurately notify Plaintiffs and Class members if their data had been breached and/or compromised.

72.     Plaintiffs and Class members would not have provided and entrusted their Personal Information to Capital One to apply for the Capital One credit card products in the absence of the implied contract between them and Capital One.

73.     Plaintiffs and Class members fully performed their obligations under the implied contracts with Capital One.

74.     Capital One breached the implied contracts it made with Plaintiffs and Class members by failing to safeguard and protect Plaintiffs' and Class members' Personal Information, and by failing to provide timely and accurate notice to them that their Personal Information was compromised as a result of the Data Breach.

75.     Capital One breached the implied contracts it made with Plaintiffs and Class members by failing to ensure that Plaintiffs' and Class members' Personal Information in its possession was used only for the agreed-upon application verification and no other purpose.

76.     Plaintiffs and Class members conferred a monetary benefit on Capital One which has accepted or retained that benefit. Specifically, the credit card products typically carry annual fees and other charges (e.g. interest) for use. In exchange, Plaintiffs and Class members should have received the services that were the subject of the transaction and should have been entitled to have Capital One protect their Personal Information with adequate data security measures.

77.     Capital One failed to secure Plaintiffs' and Class members' Personal Information and, therefore, did not provide full compensation for the benefit Plaintiffs and Class members provided.

78.     Capital One acquired the Personal Information through inequitable means when it failed to disclose the inadequate security practices previously alleged.

79.     If Plaintiffs and Class members had known that Capital One would employ inadequate security measures to safeguard Personal Information, they would not have applied for the Capital One credit card products.

80.     As a direct and proximate result of Capital One's breaches of the implied contracts between Capital One on the one hand, and Plaintiffs and Class members on the other, Plaintiffs and Class members sustained actual losses and damages as described in detail above.

81.     Plaintiffs and Class members were harmed as the result of Capital One's breach of the implied contracts because their Personal Information was compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their Personal Information was disclosed to third parties without their consent. Plaintiffs and Class members also suffered

diminution in value of their Personal Information in that it is now easily available to hackers. Plaintiffs and the Class have also suffered consequential out-of-pocket losses for procuring credit freeze or protection services, identity theft monitoring, late fees, bank fees, and other expenses relating to identity theft losses or protective measures. The Class members are further damaged as their Personal Information remains in the hands of those who obtained it without their consent.

82. This breach of implied contracts was a direct and legal cause of the injuries and damages to Plaintiffs and Class members as described above.

## SECOND CLAIM FOR RELIEF
### Negligence
### (On behalf of all Classes)

83. Plaintiffs restates and realleges paragraphs 1 through 66 as if fully set forth herein.

84. Capital One solicited and took possession of Plaintiffs' and the Class members' Personal Information, and Capital One had a duty to exercise reasonable care in securing that information from unauthorized access or disclosure. Capital One further had a duty to destroy Plaintiffs' and Class members' Personal Information within an appropriate amount of time after it was no longer required by Capital One, in order to mitigate the risk of such non-essential Personal Information being compromised in a data breach.

85. Upon accepting and storing Plaintiffs' and Class members' Personal Information in its computer systems and on its networks, Capital One undertook and owed a duty of care to Plaintiffs and Class members to exercise reasonable care to secure and safeguard Plaintiffs and Class members' Personal Information and to use commercially-reasonable methods to do so. Capital One knew that the Personal Information was private and confidential and should be protected as private and confidential.

86.    Capital One owed a duty of care not to subject Plaintiffs and Class members, along with their Personal Information, to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

87.    Capital One owed a duty of care to Plaintiffs and Class members to quickly detect a data breach and to timely act on warnings about data breaches.

88.    Capital One's duties arose from its relationship to Plaintiffs and Class members and from industry custom.

89.    Capital One, through its actions and/or failures to act, unlawfully breached duties to Plaintiffs and Class members by failing to implement standard industry protocols and to exercise reasonable care to secure and keep private the Personal Information entrusted to it.

90.    Capital One, through its actions and/or failures to act, allowed unmonitored and unrestricted access to unsecured Personal Information.

91.    Capital One, through its actions and/or failures to act, failed to provide adequate supervision and oversight of the Personal Information with which it was entrusted, despite knowing the risk and foreseeable likelihood of a breach and misuse, which permitted unknown third parties to gather Plaintiffs' and Class members' Personal Information, misuse that Personal Information, and intentionally disclose it to unauthorized third parties without consent.

92.    Capital One knew, or should have known, the risks inherent in collecting and storing Personal Information, the importance of adequate security and the well-publicized data breaches within the financial services industry.

93.    Capital One knew, or should have known, that its data systems and networks did not adequately safeguard Plaintiffs' and Class members' Personal Information.

94.    Due to Capital One's knowledge that a breach of its systems would damage

millions of its customers, including Plaintiffs and Class members, Capital One had a duty to adequately protect its data systems and the Personal Information contained thereon.

95. Capital One had a special relationship with Plaintiffs and Class members. Plaintiffs' and Class members' willingness to entrust Capital One with their Personal Information was predicated on the understanding that Capital One would take adequate security precautions to safeguard that information. Moreover, only Capital One had the ability to protect its systems and the Personal Information stored on those systems from attack.

96. Capital One's own conduct also created a foreseeable risk of harm to Plaintiffs and Class members and their Personal Information. Capital One's misconduct included failing to: (1) secure its computer systems, despite knowing their vulnerabilities; (2) comply with industry standard security practices; (3) implement adequate system and event monitoring; and (4) implement the systems, policies, and procedures necessary to prevent this type of data breach.

97. Capital One also had independent duties under federal laws that required Capital One to reasonably safeguard Plaintiffs' and Class members' Personal Information, and promptly notify them about the Data Breach.

98. Capital One breached its duties to Plaintiffs and Class members in numerous ways, including:

    a. by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' Customer Data;

    b. by creating a foreseeable risk of harm through the misconduct previously described;

    c. by failing to implement adequate security systems, protocols, and practices sufficient to protect Plaintiffs' and Class members' Personal Information before and after learning of the Data Breach;

d.  by failing to comply with industry standard data security standards during the period of the Data Breach; and

e.  by failing to timely and accurately disclose that Plaintiffs' and Class members' Personal Information had been improperly acquired or accessed.

99.     Through Capital One's acts and omissions described in this Complaint, including Capital One's failure to provide adequate security and its failure to protect Plaintiffs' and Class members' Personal Information from being foreseeably captured, accessed, disseminated, stolen, and misused, Capital One unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiffs' and Class members' Personal Information while it was within Capital One's possession or control.

100.    The law further imposes an affirmative duty on Capital One to timely disclose the unauthorized access and theft of Plaintiffs' and Class members' Personal Information, so that Plaintiffs and Class members can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Personal Information.

101.    Capital One breached its duty to notify Plaintiffs and Class Members of the unauthorized access to their Personal Information by waiting to notify Plaintiffs and Class members, and then by failing to provide Plaintiffs and Class members enough information regarding the breach.

102.    Through Capital One's acts and omissions described in this Complaint, including Capital One's failure to provide adequate security and its failure to protect Plaintiffs' and Class members' Personal Information from being foreseeably captured, accessed, disseminated, stolen, and misused, Capital One unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiffs' and Class members' Personal Information while it was within

Capital One's possession or control.

103.    Further, through its failure to provide timely and clear notification of the Data Breach to consumers, Capital One prevented Plaintiffs and Class members from taking meaningful, proactive steps to secure their financial data and bank accounts.

104.    Upon information and belief, Capital One improperly and inadequately safeguarded Plaintiffs and Class members' Personal Information in deviation of standard industry rules, regulations, and practices at the time of the unauthorized access. Capital One's failure to take proper security measures to protect sensitive Personal Information as described in this Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiffs and Class members' Personal Information.

105.    Capital One's conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to: failing to adequately protect the Personal Information; failing to conduct regular security audits; failing to provide adequate and appropriate supervision of persons having access to Plaintiffs' and Class members' Personal Information; and failing to provide Plaintiffs and Class members with timely and sufficient notice that their sensitive Personal Information had been compromised.

106.    Neither Plaintiffs nor the other Class members contributed to the Data Breach and subsequent misuse of their Personal Information as described in this Complaint.

107.    Capital One's failure to exercise reasonable care in safeguarding Personal Information by adopting appropriate security measures, including proper encryption storage techniques, was the direct and proximate cause of Plaintiffs' and Class members' Personal Information being accessed and stolen through the data breach.

108.    Capital One breached its duties to Plaintiffs and Class members by failing to

provide fair, reasonable, and adequate computer systems and data security practices to safeguard Plaintiffs and Class members' Personal Information.

109.    As a result of Capital One's breach of duties, Plaintiffs and the Class suffered damages including, but not limited to: damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports, and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.   The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

### THIRD CLAIM FOR RELIEF
**Negligence *Per Se***
**(On behalf of all Classes)**

110.    Plaintiffs restate and reallege paragraphs 1 through 66 as if fully set forth herein.

111.    Section 5 of the FTC Act prohibits "unfair ... practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Capital One, of failing to use reasonable measures to protect Personal Information. The FTC publications and orders described above also form part of the basis of Capital One's duty in this regard.

112.    Capital One violated Section 5 of the FTC Act by failing to use reasonable measures to protect Personal Information, and not complying with applicable industry standards, as described in detail herein. Capital One's conduct was particularly unreasonable given the

nature and amount of Personal Information it obtained and stored, and the foreseeable consequences of a data breach including, specifically, the immense damages that would result to Plaintiffs and Class members.

113.    Capital One's violation of Section 5 of the FTC Act constitutes negligence *per se.*

114.    Plaintiffs and Class members are within the class of persons that the FTC Act was intended to protect.

115.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

116.    As a direct and proximate result of Capital One's negligence *per se,* Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from identity theft; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia,* by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports, and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

117.    Additionally, as a direct and proximate result of Capital One's negligence *per se,* Plaintiffs and Class members have suffered and will suffer the continued risks of exposure of their Personal Information, which remain in Capital One's possession and is subject to further unauthorized disclosures so long as Capital One fails to undertake appropriate and adequate

measures to protect the Personal Information in its continued possession.

## FOURTH CLAIM FOR RELIEF
### Invasion of Privacy
### (On behalf of all Classes)

118.   Plaintiffs restates and realleges paragraphs 1 through 66 as if fully set forth herein.

119.   Plaintiffs and Class members had a legitimate expectation of privacy to their Personal Information and were entitled to the protection of this information against disclosure to unauthorized third parties.

120.   Capital One owed a duty to its credit product applicant, including Plaintiffs and Class members, to keep their Personal Information confidential.

121.   Defendants failed to protect and released to unknown and unauthorized third parties' databases containing the Personal Information of Plaintiffs and Class members.

122.   Defendants allowed unauthorized and unknown third parties access to and examination of the Personal Information of Plaintiffs and Class members, by way of Defendants' failure to protect the Personal Information in the databases.

123.   The unauthorized release to, custody of, and examination by unauthorized third parties of the Personal Information of Plaintiffs and Class members, especially where the information includes Social Security numbers and dates of birth, is highly offensive to a reasonable person.

124.   The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiffs and Class members disclosed their Personal Information to Defendants as part of their use of Defendants' services, but privately with an intention that the Personal Information

would be kept confidential and would be protected from unauthorized disclosure. Plaintiffs and Class members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

125.    The Data Breach at the hands of Defendants constitutes an intentional interference with Plaintiffs and Class members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

126.    Capital One acted with a knowing state of mind when it permitted the Data Breach because it had actual knowledge that its information security practices were inadequate and insufficient.

127.    As a proximate result of the above acts and omissions of Defendants, the Personal Information of Plaintiffs and Class members was disclosed to third parties without authorization, causing Plaintiffs and Class members to suffer damages.

128.    Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class members in that the Personal Information maintained by Defendants can be viewed, distributed, and used by unauthorized persons. Plaintiffs and Class members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the Class.

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On behalf of the Florida Sub-Class Only)

129.    Plaintiffs restate and reallege paragraphs 1 through 66 as if fully set forth herein.

130.    Plaintiffs and members of the Florida Sub-Class conferred a monetary benefit on

Capital One.

131.    Specifically, they provided and entrusted their Personal Information to Capital One.

132.    In exchange, Plaintiffs and Florida Sub-Class members should have been entitled to have Capital One protect their Personal Information with adequate data security.

133.    Capital One appreciated, accepted, and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from Capital One's conduct toward Plaintiffs and Class Members as described herein; Plaintiffs and Class members conferred a benefit on Capital One and accepted or retained that benefit. Capital One used Plaintiffs' and Florida Sub-Class members' Personal Information for business purposes.

134.    Capital One failed to secure Plaintiffs and Florida Sub-Class members' Personal Information and, therefore, did not provide full compensation for the benefit Plaintiffs and Class members provided.

135.    Capital One acquired the Personal Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged, as well as failing to destroy or otherwise purge the Personal Information from its computer systems after Capital One no longer had a legitimate business purpose to maintain that Personal Information.

136.    If Plaintiffs and Florida Sub-Class members knew that Capital One would not secure their Personal Information using adequate security, they would not have applied for Capital One credit card products.

137.    Plaintiffs and Florida Sub-Class members have no adequate remedy at law.

138.    Under the circumstances, it would be unjust for Capital One to be permitted to retain any of the benefits that Plaintiffs and Florida Sub-Class members conferred on it.

139.    Under the principles of equity and good conscience, Capital One should not be permitted to retain the Personal Information belonging to Plaintiffs and Florida Sub-Class members because Capital One failed to implement the data management and security measures that industry standards mandate.

140.    Capital One should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Florida Sub-Class members, proceeds that it unjustly received from them. In the alternative, Capital One should be compelled to refund the amounts that Plaintiffs and Class members overpaid for security they did not receive.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, respectfully seeks from the Court the following relief:

a.    Certification of the Classes as requested herein;

b.    Appointment of Plaintiffs as Class representative and their undersigned counsel as Class counsel;

c.    Award Plaintiffs and members of the proposed Class damages;

d.    Award Plaintiffs and members of the proposed Class equitable, injunctive and declaratory relief, including the enjoining of Capital One's insufficient data protection practices at issue herein and Capital One's continuation of its unlawful business practices as alleged herein;

e.    An order declaring that Capital One's acts and practices with respect to the safekeeping of Personal Information are negligent;

f.    Award Plaintiffs and members of the proposed Class pre-judgment and post- judgment interest as permitted by law;

      g.            Award Plaintiffs and members of the proposed Class reasonable attorney

                   fees and costs of suit, including expert witness fees; and

      h.            Award Plaintiffs and members of the proposed Class any further relief

                   the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues triable by right.

Dated this 5th day of August, 2019.

                                   Respectfully submitted,

                                   */s/ J. Andrew Meyer*
                                   J. Andrew Meyer, Esq.
                                   Florida Bar No.: 0056766
                                   ameyer@finnlawgroup.com
                                   pleadings@finnlawgroup.com
                                   **FINN LAW GROUP, P.A.**
                                   7431 114th Ave., Suite 104
                                   Largo, Florida 33773
                                   Telephone: (727) 214-0700
                                   Facsimile: (727) 475-1494

                                   and

                                   */s/ Michael A. Ziegler*
                                   Michael A. Ziegler, Esq.
                                   Florida Bar No.: 74864
                                   mike@zieglerlawoffice.com

                                   */s/ Kaelyn Steinkraus*
                                   Kaelyn Steinkraus, Esq.
                                   Florida Bar No.: 125132
                                   kaelyn@zieglerlawoffice.com

                                   **Law Office of Michael A. Ziegler, P.L.**
                                   2561 Nursery Road, Suite A
                                   Clearwater, Florida 33764
                                   Telephone: (727) 538-4188
                                   Facsimile: (727) 362-4778
                                   *Counsel for Plaintiffs and the Proposed Class*